IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JOE JOHNSON**<br>11550 LIVINGSTON ROAD UNIT 441572<br>FORT WASHINGTON, MD 20749<br><br>  Plaintiff,<br><br>VS.<br><br>**LINWOOD CLINTON WRIGHT JR.**<br>436 DRESHERTOWN ROAD<br>FORT WASHINGTON, PA 19034<br><br>  And<br><br>**KURT LEONARD KUECHLER**<br>86 CANNON PLACE<br>ORELAND, PA 19075<br><br>  And<br><br>**UNITED STATES OF AMERICA**<br>Serve: Attorney General of the United States<br>950 PENNSYLVANIA AVENUE, NW<br>WASHINGTON, D.C. 20530-0001<br><br>  Defendants. | Civil Action No. _____ |

## ORIGINAL COMPLAINT

COMES NOW, the Plaintiff, Joe JOHNSON, and represent to the Court, that:

### JURISDICTION

1. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332, in that there is true diversity of citizenship as the Plaintiff is a citizen of the State of Maryland and Defendants Linwood Clinton Wright Jr. ("Wright") and Kurt Leonard Kuechler ("Kuechler") are citizens of the State of Pennsylvania, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and cost.

2. This Court also has jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346, in that the claims alleged against Defendant United States of America in this action arises out of the negligent or wrongful acts and omissions of employees of the Government while acting within the scope of his or her office or employment.

3. This Court further has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §1331, as this case involves questions of federal law. This Court also has jurisdiction pursuant to 28 U.S.C. §1343 because Plaintiff seek damages for violation of his civil rights.

## PARTIES

4. Plaintiff is a citizen of the State of Maryland residing in Prince George's County.

5. Defendant Wright is a citizen of the State of Pennsylvania, and is currently residing at 436 Dreshertown Road, Fort Washington, Pennsylvania in Montgomery County, and is being sued personally for his involvement in this action. Service of process may be made upon Defendant Wright personally or upon Anita E. Wright at the same place of abode as the Defendant.

6. Defendant Kuechler is a citizen of the State of Pennsylvania, and is currently residing at 86 Cannon Place, Oreland, Pennsylvania in Montgomery County, and is also being sued personally for his involvement in this action. Service of process may be made upon Defendant Kuechler personally or upon Anna K. Kuechler at the same place of abode as the Defendant

7. Defendant United States of America is sued under the Federal Tort Claims Act for the negligent, wrongful acts and omissions of employees of the SCP Schuylkill, an agency of the Defendant, while acting within the scope of their office and employment.

## FACTS COMMON TO ALL COUNTS

On June 27, 2019, Defendant Wright made a charging decision to go before a federal grand jury sitting in the Eastern District of Pennsylvania to obtain a two-count indictment charging a Joseph R. Johnson, Jr. with one count of false statements and aiding and abetting, in violation of 18 U.S.C. §§1001 and 2, and one count of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§1028A and 2, arising out of an alleged false filing that allegedly occurred in the Federal District Court in the Eastern District of Pennsylvania on or about February 1, 2016. Defendant Wright knew or should have known that there was no evidence of "materiality" which was a necessary and required element to constitute a federal crime under 18 U.S.C. §§1001.

Based upon information and belief, during the course of his investigation, Defendant Kuechler, fabricated evidence that was intended to link the Plaintiff to the alleged false filing by planting the Plaintiff's fingerprints on pieces of tape on the outside of the envelope containing the false filing, and then manufacturing a document that was described as "Devout Player Hater Internet Post (2001 Honda Accord EX V6 power steering)" which was purportedly an internet posting that the Plaintiff allegedly authored that never existed. During the course of the trial, Defendant Wright, having direct and specific knowledge or who should have had knowledge of the fabricated and manufactured evidence, elicited and suborned perjured testimony from Defendant Kuechler about the false evidence and proffered the fabricated evidence into evidence at the Plaintiff's trial to establish a causal link between Plaintiff, the Devout Player Hater character, and the purported false filing. On November 14, 2019, a petit jury relied on the fabricated and manufactured evidence to convict the Plaintiff of the baseless charges, and on February 28, 2020, Plaintiff was sentenced to 32 months imprisonment. On March 13, 2020, Plaintiff's timely amended notice of appeal was received by the United States Court of Appeals for the Third Circuit.

Beginning on August 10, 2020, Plaintiff began serving the term of imprisonment at the Schuylkill Federal Prison Camp in Minersville, PA, and while confined there, Plaintiff was exposed to extremely dangerous prison conditions. Specifically, the novel coronavirus also known as SARS-nCoV-2 that causes COVID-19, a deadly respiratory infection for which no known cure or vaccine was then and there available. On March 11, 2020, prior to arriving at the Schuylkill Federal Prison Camp, the World Health Organization had declared COVID-19 a global pandemic. At that time, the United States registered 1,267 of the 118,000 confirmed global cases and 38 of the 4,291 deaths. The virus was highly infectious and spreads primarily through close contact with an infected person (who may be asymptomatic), including through respiratory droplets produced when the infected person coughs, sneezes, or talks. The virus can also spread through contact with a contaminated surface. It was universally recognized that COVID-19 posed a particularly tough challenge for the incarcerated citizenry. Social distancing and rigorous personal hygiene were important combatants to the virus but those housed in prisons, like the Plaintiff was, had to eat, sleep, talk, and tend to their every personal need in each other's close physical space. COVID-19 was especially deadly for the detained population because they were disproportionately more likely to suffer from chronic medical conditions. In recognition of this stark reality, the Center for Disease Control ("CDC") on March 23, 2020, issued guidance for officials operating detention facilities to help stop the spread of COVID-19.

The guidance included detailed recommendations about proper hygiene and cleaning practices, social distancing, evaluating symptoms, and the use of medical isolation and quarantine. The CDC's guidelines provided a useful benchmark in determining whether the Facility's policies and procedures were appropriate and the BOP adopted and incorporated those guidelines into its mandatory procedures that all facilities were required to follow but did not.

Thus, the standard precautions to prevent the spread of the virus in a correctional setting, such as SCP Schuylkill, include: limiting operational entrances and exists to the facilities and restricting transfers of detained persons unless necessary to prevent overcrowding; performing pre-intake screening for temperature checks for incoming detainees to identify and address both symptomatic individuals and asymptomatic individuals who had recent close contact to a known COVID-19 case; increasing cleaning and disinfecting frequency for high touch areas; encouraging all staff and detainees to wear a cloth face covering as much as possible; reinforcing healthy hygiene practices amongst the detainee population; providing soap, running water, cloth face masks, and tissues to detainees; implementing "social distancing" strategies to increase the physical space between incarcerated persons, knowing 6-feet distance is not always possible in a correctional setting; suspending or limiting activities that would likely involve participants being in "closer contact than they are in their housing environment;" and performing daily temperature checks in housing units where COVID-19 cases have been identified.

The CDC further recommended that management in a correctional facility: (a) provide no-touch receptacles; (b) alcohol-based sanitizer where permissible based on security restrictions"; (c) education on mask wear and symptoms; (d) suspend or modify visitation programs where able, promote non-contact visits, and require visitors to wear cloth face coverings and perform verbal screening and temperature checks upon entry; and (e) display educational signage in multiple languages. The CDC also prescribes quarantine and isolation practices for infected detainees as well as testing and contact tracing whenever feasible. Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic obstructive pulmonary disease, weakened immune system from organ transplant, obesity,

pregnancy, sickle cell disease, smoking, and type 2 diabetes mellitus. Persons who have the following medical conditions might be at an increased risk: asthma, cerebrovascular disease, cystic fibrosis, hypertension, immuno-compromised state, neurologic conditions, liver diseases, pulmonary fibrosis, thalassemia, type 1 diabetes mellitus. Finally, racial, and ethnic minorities may also be at an increased risk due to societal inequities, such as access to health care and poorer living conditions. In recognition of the CDC's guidance, the Federal Bureau of Prisons ("BOP") purportedly took the following steps to combat the virus. On March 13, 2020, the BOP modified the operations in accordance with its "COVID-19 Action Plan." Initially, all social visits, inmate movement, and official staff travel were supposed to be suspended for thirty days. Contractors who enter any BOP facility were supposed to be screened for the virus, and initially admission was supposed to be limited to contractors who performed essential services, and enhanced health screenings for staff in areas of "sustained community transmission" was supposed to be conducted and all new inmates were supposed to be screened for virus "exposure risk factors and symptoms." Any inmate who was asymptomatic but had a risk of exposure was supposed to be quarantined. The quarantine period was supposed to be for a minimum of fourteen days or until cleared by medical staff, and new inmates who were symptomatic were supposed to be placed in isolation until they tested negative for the virus or were cleared by medical staff. In addition, group gatherings were supposed to be limited to permit social distancing as much as possible, all staff and inmates were supposed to be issued face masks, and all staff and inmates were supposed to be encouraged to wear face masks when social distancing could not be achieved.

The BOP did not institute a policy requiring staff to wear face masks until August 27, 2020, and even that guidance contemplated religious exemptions, medical exemptions, and outright refusals to comply with the mask mandate.

Furthermore, BOP employees were permitted to continue working after potential exposure to COVID-19 which allowed the virus to spread throughout the facility. The BOP, and employees at SCP Schuylkill were aware of the risks posed by COVID-19 as early as January 2020. Moreover, BOP COVID-19 Pandemic Response Plan prescribed the course of action for all BOP employees at SCP Schuylkill to follow to prevent the spread of contagious diseases such as the deadly coronavirus into prison facilities but employees at SCP Schuylkill failed to follow it. Despite being fully cognizant of the risks posed by the virus, employees at SCP Schuylkill failed to follow any of the basic recommendations of the CDC, or otherwise, follow the BOP mandatory COVID-19 Pandemic Response Plan to prevent the spread of the virus into the SCP Schuylkill facility.

As of November 10, 2020, the BOP COVID-19 statistics were as follows: (1) 2,455 inmates and 981 staff had confirmed positive tests; (2) 17, 067 inmates and 1,543 staff had recovered and (3) 135 inmates and 2 staff had died. FCI Schuylkill – where the Plaintiff was housed at the adjacent satellite camp, SCP Schuylkill – had as of November 11, 2020, 4 positive cases among staff, as well as 1 inmate and 1 staff member who had recovered. FCI Schuylkill later became the epic-center for the coronavirus as employees were permitted and/or required to continue working after being exposed to the virus which caused it to spread into the facility. On August 10, 2020, Plaintiff was placed in the custody and care of the BOP, and was housed at the SCP Schuylkill satellite camp to begin serving the federal sentence. At the time of his arrival, Plaintiff was about 5 feet 6, weighed about 180 pounds with a BMI of more than 30. Employees at SCP Schuylkill knew that a BMI of 30 or higher puts one in the "obese" category per the CDC, and that with a BMI of at least 30, Plaintiff was obese and at risk of getting severely sick. Employees at SCP Schuylkill also knew that the Plaintiff's obesity, his race, and being an ethnic minority placed him at a higher risk of severe illness or death if he were to be exposed to and contracted COVID-19.

Prior to December of 2020, Plaintiff tested negative for the COVID-19 virus. In late December of 2020, a massive COVID-19 outbreak occurred in the main FCI Schuylkill campus that resulted in at least 160 inmates testing positive for COVID-19. On December 23, 2020, the COVID-19 outbreak made its way to SCP Schuylkill and inmates as well as staff tested positive for the virus. Despite the fact that the main FCI Schuylkill institution was the epic-center of the coronavirus, Plaintiff was forced into quarantine or transferred for housing to a facility at a much higher security level than he should have been exposed to. Plaintiff initially tested negative for the virus on December 23, 2020 before being quarantined, and while was housed at the epic-center of the virus, Plaintiff was exposed to the coronavirus. Employees at SCP Schuylkill failed to take any precautionary measures to prevent or stop the spread of the virus and continued working after being exposed to the virus, and as a result of this persistent course of action, on March 2, 2021, and again on September 1, 2021, Plaintiff was exposed to and placed at risk of contracting the coronavirus virus after multiple individuals as well as staff tested positive for having COVID-19 at SCP Schuylkill. On June 25, 2021, Plaintiff submitted an Administrative Tort Claim to the BOP pursuant to the Federal Tort Claims Act for exposure to dangerous prison conditions as a result of the failure of employees at SCP Schuylkill to, among other things, follow mandatory health and safety protocols to prevent the spread of a contagious disease. Meanwhile, on November 23, 2021, Plaintiff's convictions and sentence were reversed on the ground that he was not guilty of the offense of which he was unjustly convicted and the alleged conduct for which he had been falsely accused constituted no offense against the United States. Significantly, in reversing his unjust conviction, the Third Circuit noted that "Johnson's behavior wasted public time and resources and distracted court officials from their work. But only Congress enjoys the authority to turn conduct into a federal crime." *United States v. Johnson*, 19 F.4th 248, 263 (3rd Cir. 2021).

Citing *Berger v. United States*, 295 U.S. 78, 88 (1935), the Third Circuit painstakingly commented on the Government's conduct in bringing the prosecution as follows:

> "for bad acts to constitute crimes, at trial the Government must prove each element beyond a reasonable doubt. This is because the Government, through the United States Attorney, "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."" "That ancient guarantee was not honored."

*Id.*

On January 4, 2022, in accordance with the November 23, 2021 published opinion and the December 9, 2021 judgment of the Court of Appeals for the Third Circuit, the district court entered a final judgment of acquittal. By letter dated February 11, 2022, Plaintiff's Administrative Claim was denied by the BOP. *See* **Exhibit** A. Plaintiff now brings this action to seek redress.

## COUNT ONE: AGAINST DEFENDANT WRIGHT
(Malicious Prosecution)

8. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

9. On or about June 27, 2019, Defendant Wright, without any probable cause, instituted or caused to be instituted, a criminal proceeding against the Plaintiff that falsely accused Plaintiff of having made a "materially" false statement, in violation of 18 U.S.C. §1001, and aggravated identity theft in connection with the purported "materially" false statement, in violation of 18 U.S.C. §1028A. Defendant Wright knew or should have known that there were no evidence that the Plaintiff had made a "materially" false statement, and therefore did not commit aggravated identity theft in connection with the purported false statement as "materiality" was a necessary and required element to constitute probable cause and a federal crime under 18 U.S.C. §1001.

10. Defendant Wright instituted or caused to be instituted the criminal proceeding against the Plaintiff with malice and for a purpose other than bringing the Plaintiff to justice.

11. Pursuant to the Defendant's false accusations, on June 28, 2019, Plaintiff was arrested, booked, fingerprinted, photographed, and detained. Plaintiff was subsequently convicted and sentenced to 32 months imprisonment, and on August 10, 2020, the Plaintiff began serving the sentence. Upon conclusion of the criminal proceedings and appeal, on November 23, 2021, Plaintiff's convictions and sentence were reversed, and Plaintiff was acquitted and discharged of all of the charges that Defendant Wright instituted or caused to be instituted against the Plaintiff.

12. As a result of Defendant Wright's conduct and actions, Plaintiff has suffered and will continue to suffer severe mental anguish, loss of reputation, and other compensable damages.

## COUNT TWO: AGAINST DEFENDANT WRIGHT
(Negligence)

13. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

14. At all times relevant, Defendant Wright owed the Plaintiff a duty to, inter alia, refrain from prosecuting a charge that he know is not supported by probable cause, including, a duty to seek justice within the bounds of the law. Defendant Wright knew, or should have known, that the Plaintiff had committed no crime in that he did not make a "materially" false statement as the Defendant falsely claimed, and that Congress require both falsity and "materiality" to impose liability under 18 U.S.C. §1001. Defendant Wright breached his duty to the Plaintiff by prosecuting a charge that he knew or should have known was not supported by probable cause and by failing to seek justice other than to merely convict the Plaintiff of the baseless charges.

15. As a result of the Defendant's conduct and actions, Plaintiff has suffered and will continue to suffer severe mental anguish, loss of reputation, and other compensable damages.

## COUNT THREE: AGAINST DEFENDANT WRIGHT
(Defamation)

16. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

17. On or about June 28, 2019, and continuing thereafter, Defendant Wright made or caused to be made unprivileged false statements of fact to third parties, known and unknown, to the effect that the Plaintiff had, among other things, made a "materially" false statement.

18. Defendant's statements that the Plaintiff had made a "materially" false statement were complete fabrications, were untrue and defamatory *per se*. Plaintiff did not make any "materially" false statement. Defendant Wright made the false and defamatory statements with malice for the sole purpose of impugning the Plaintiff of having committed a federal crime for which he was liable to be punished under Federal law. In making the defamatory statements, Defendant Wright acted intentionally, maliciously, willfully and with the intent to cause and inflict injury upon the Plaintiff.

19. Defendant Wright knew or should have known that his statements were false, and willfully and deliberately published them or caused them to be published with actual knowledge that they were false or with reckless disregard of whether they were false or not. Defendant Wright either knew that the statements were false or conducted no investigation concerning the truth or veracity of the defamatory statements with the sole purpose of impugning the Plaintiff of having committed a federal crime for which the Plaintiff was liable, and in fact was unjustly punished.

20. As a result, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish and personal humiliation, and other compensable damages.

## COUNT FOUR: AGAINST DEFENDANTS WRIGHT AND KUECHLER
(False Arrest)

21. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

22. On or about June 27, 2019, Defendant Wright, without any probable cause, instituted or caused to be instituted, a criminal proceeding against the Plaintiff that falsely accused Plaintiff of having made a "materially" false statement, in violation of 18 U.S.C. §1001, and aggravated identity theft in connection with the purported "materially" false statement, in violation of 18 U.S.C. §1028A.

23. Defendants Wright and Kuechler knew or should have known that there was no evidence that the Plaintiff had made a "materially" false statement, and therefore did not commit aggravated identity theft in connection with the purported false statement as "materiality" was a necessary and required element to constitute a federal crime under 18 U.S.C. §1001.

24. On June 28, 2019, Plaintiff was arrested in connection with the criminal proceeding, and on November 24, 2021, Plaintiff was released on the ground that he was innocent and had not committed any crime against the United States.

25. As a result of the Defendants' conduct and actions, Plaintiff has suffered, and will continue to suffer, severe mental anguish, medical and other related expenses, and loss of income, and other compensable damages.

## COUNT FIVE: AGAINST DEFENDANTS WRIGHT AND KUECHLER
(False Imprisonment)

26. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

27. On or about June 27, 2019, Defendant Wright, without any probable cause, instituted or caused to be instituted, a criminal proceeding against the Plaintiff that falsely accused Plaintiff of having made a "materially" false statement, in violation of 18 U.S.C. §1001, and aggravated identity theft in connection with the purported "materially" false statement, in violation of 18 U.S.C. §1028A. Defendant Wright and Kuechler knew or should have known that there was no evidence that the Plaintiff had made a "materially" false statement, and therefore did not commit aggravated identity theft in connection with the purported false statement as "materiality" was a necessary and required element to constitute a federal crime under 18 U.S.C. §1001.

28. On June 28, 2019, Plaintiff was restrained in connection with the criminal proceeding, and on November 24, 2021, Plaintiff was released on the ground that he was innocent and had not committed any crime against the United States in that the Defendants knew, or should have known, that there was no evidence that the Plaintiff actually made a "materially" false statement to be liable for violation of 18 U.S.C. §1001, and therefore did not commit aggravated identity theft in connection with the purported false statement.

29. Defendants' actions caused the Plaintiff to be unlawfully deprived of his liberty and Plaintiff was detained against his will for more than 29 months.

30. As a result of the Defendants' conduct and actions, Plaintiff suffered damage by being unlawfully held against his will for an extended period of time.

### COUNT SIX: AGAINST DEFENDANTS WRIGHT AND KUECHLER
(Civil Rights Violation)

31. Pleading further and in the alternative, Defendants Wright and Kuechler while acting under color of Federal law, violated the Plaintiff's civil rights to procedural due process by planting, fabricating, and manufacturing evidence to secure the Plaintiff's unjust conviction.

32. Specifically, on or about June 27, 2019, Defendant Wright, without probable cause, instituted or caused to be instituted, a criminal proceeding against Plaintiff that falsely accused him of making a "materially" false statement, in violation of 18 U.S.C. §1001, and aggravated identity theft in connection with the purported false statement, in violation of 18 U.S.C. §1028A, arising out of an alleged false filing that allegedly occurred in the Federal District Court in the Eastern District of Pennsylvania on or about February 1, 2016.

33. Based upon information and belief, during the course of his investigation, Defendant Kuechler, planted the Plaintiff's fingerprints on pieces of tape affixed to the outside of the envelope containing the filing for the sole purpose and intent to link Plaintiff to the false filing.

34. Based upon further information and belief, during the course of his investigation, Defendant Kuechler, also fabricated other evidence that was intended for the sole purpose and intent to link Plaintiff to the alleged false filing by creating and manufacturing a document described as "Devout Player Hater Internet Post (2001 Honda Accord EX V6 power steering)" which was purportedly an internet posting that the Plaintiff allegedly authored that never existed.

35. During the course of the trial, Defendant Wright, having knowledge or who should have had knowledge of the fabricated and manufactured evidence, elicited and suborned perjured testimony from Defendant Kuechler about the false evidence and proffered the fabricated and manufactured document into evidence at the Plaintiff's trial to establish a causal link between the Plaintiff, the Devout Player Hater character, and the purported false filing. On November 14, 2019, a petit jury relied on the fabricated and manufactured evidence to convict the Plaintiff of the baseless charges, and on February 28, 2020, Plaintiff was sentenced to 32 months imprisonment.

36. On November 23, 2021, Plaintiff's convictions and sentence were reversed on the ground that he was not guilty of the offense of which he was unjustly convicted.

37. As a result of the Defendants' unlawful actions, Plaintiff was falsely arrested, unjustly convicted, and imprisoned in violation of his civil rights to procedural due process.

### COUNT SEVEN: AGAINST DEFENDANTS WRIGHT AND KUECHLER
(Intentional Infliction of Emotional Distress)

38. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

39. Defendants Wright and Kuechler deliberately and intentionally fabricated, manufactured and proffered at trial evidence that it knew or should have known was false and would be relied on by the jury to wrongly convict the Plaintiff. This conduct was perpetrated by the Defendants beyond the scope of their employment. Defendant is liable for all of the acts committed by its agents, servants, and employees within the scope of their employment.

40. Defendant Wright and Kuechler's conduct as described in the preceding paragraphs was extreme and outrageous and was done intentionally, recklessly, in bad faith and in deliberate disregard of a high degree of probability that emotional distress would result to the Plaintiff.

41. Defendants Wright and Kuechler knew or should have known that their conduct would or could cause emotional distress upon the Plaintiff, and in fact it did cause emotional distress upon the Plaintiff. Defendants Wright and Kuechler's conduct as described in the preceding paragraphs was malicious, willful, deliberate, and intentional and was done for the sole purpose of inflicting severe emotional distress upon the Plaintiff.

42. As a result, Plaintiff has suffered physical harm due to the Defendants' extreme and outrageous conduct, including, but not limited to loss of sleep, headaches, severe mental pain, depression and will continue to suffer severe and extreme emotional distress, loss of sleep, headaches, severe mental pain, and depression as a result of the Defendant's employees' conduct.

## COUNT EIGHT: AGAINST DEFENDANT UNITED STATES
### (Negligence)

43. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

44. At all times relevant, Plaintiff was confined at SCP Schuylkill in Minersville, PA serving a federal sentence.

45. Pursuant to 18 U.S.C. §4042, Defendant owed Plaintiff a legal duty of care, as a federal prisoner in its custody to, among other things, "provide suitable quarters, and provide for the safe keeping, care and subsistence of all persons charged with or convicted of offenses against the United States." This duty of care required the Defendant to protect Plaintiff from the exposure to dangerous prison conditions including the corona virus.

46. BOP COVID-19 Action Plan also required that employees at all BOP facilities, including, SCP Schuylkill, enforce and strictly follow CDC guidelines to prevent the spread of the virus into the facility. SCP Schuylkill and its employees knew or should have known about the risks and dangers of the coronavirus, but failed to do anything to prevent the spread of it into the facility. Based upon information and belief, employees at SCP Schuylkill negligently or intentionally destroyed records that documented staff with related coronavirus type symptoms.

47. SCP Schuylkill and its employees breached its duty of care by, among other things, failing to provide suitable quarters and provide for the safekeeping, and care of the Plaintiff, including, failing to follow national guidelines in the prevention and testing for COVID-19, and by otherwise failing to adequately protect the Plaintiff from the exposure to dangerous prison conditions including the coronavirus, and negligently or intentionally destroying records that documented employees with coronavirus symptoms.

48. As a direct and proximate result of the breach, Plaintiff was injured and sustained damages. Plaintiff suffered, and continues to suffer, among other things, loss of sleep, worriation, depression, anxiety, and other known and unknown complications after being exposed to the coronavirus on multiple occasions, while in the Defendant's custody and care.

### COUNT NINE: AGAINST DEFENDANT UNITED STATES
(Negligent Infliction of Emotional Distress)

49. Plaintiff adopts and incorporates each and every factual allegation contained in the preceding paragraphs as set-forth herein.

50. Defendant, SCP Schuylkill, and its employees created a zone of physical danger when it failed to, among other things, follow national guidelines in the prevention and testing for COVID-19, and by otherwise failing to adequately protect the Plaintiff from the exposure to dangerous prison conditions including the coronavirus.

51. Defendant, SCP Schuylkill, and its employees knew that the Plaintiff was obese, and that he was at a higher risk of severe illness or death if he was exposed to COVID-19. Plaintiff was repeatedly exposed to the coronavirus, and suffered immediate and substantial physical harm.

52. On March 2, 2021, and September 1, 2021, Plaintiff was exposed to and placed in constant fear of contracting the coronavirus and being infected after multiple outbreaks of the virus at SCP Schuylkill.

53. Plaintiff sustained severe emotional distress, loss of sleep, worriation, depression, anxiety, mental anguish and continue to be exposed to and placed in constant fear of being infected with the virus that is likely to cause severe physical harm, severe illness, or even death.

## COUNT TEN: AGAINST DEFENDANT UNITED STATES
(Intentional Infliction of Emotional Distress)

54. Pleading further and in the alternative, at all times relevant, employees at SCP Schuylkill, deliberately and intentionally destroyed records that documented staff with related coronavirus type symptoms, and then knowingly and willfully failed to follow any CDC guidelines to prevent the spread of the coronavirus into the facility.

55. At all times relevant, employees at SCP Schuylkill knew that a BMI of 30 or higher puts one in the "obese" category, and that with a BMI of at least 30, Plaintiff was obese, and at risk of getting severely sick. Employees at SCP Schuylkill knew that the Plaintiff was at high risk of severe illness or death if he were to be exposed to the coronavirus.

56. On December 23, 2020, despite the fact that the main FCI Schuylkill institution was the epic-center of the coronavirus, employees at SCP Schuylkill being fully cognizant of the risks, forced the Plaintiff to the FCI Schuylkill main facility for the sole purpose and with the specific intent of exposing him to the virus so that he could contract the disease and become severely ill or suffer death from the exposure to deadly virus.

57. This conduct was perpetrated by the agents, servants, and employees of the Defendant within the scope of their employment. Defendant is liable for all of the acts committed by its agents, servants, and employees within the scope of their employment.

58. Defendant's employees' conduct at SCP Schuylkill as described in the preceding paragraphs was extreme and outrageous and was done intentionally, recklessly, in bad faith and in deliberate disregard of a high degree of probability that emotional distress would result to Plaintiff.

59. Defendant's employees knew or should have known that their conduct would or could cause emotional distress upon the Plaintiff, and it did cause emotional distress upon Plaintiff.

60. Defendant's employees' conduct was malicious, willful, deliberate, and intentional and was done for the sole purpose of inflicting severe emotional distress upon the Plaintiff.

61. As a result, Plaintiff has suffered physical harm due to the defendant's employees' outrageous conduct, including, but not limited to loss of sleep, headaches, severe mental pain, depression and will continue to suffer severe and extreme emotional distress, loss of sleep, headaches, severe mental pain, and depression as a result of the Defendant's employees' conduct.

## DEMAND FOR RELIEF

a) Plaintiff demands judgment in his favor on his claims against Defendants Wright and Kuechler, jointly and severally, in the amount of Three Hundred Thousand ($300,000) Dollars, as and for compensatory damages.

b) An award of general and special damages for the Defendants' wrongful acts;

c) An award of punitive damages for the Defendants' reprehensible and outrageous conduct, and to deter the Defendants' future reprehensible and outrageous conduct;

d) An award of costs and any reasonable attorney fees incurred in this action; and

e) For such further and other relief as the Court deems just and proper.

f) Plaintiff further demands judgment in his favor on his claims asserted against Defendant United States of America, in the amount of Two Hundred Thousand ($200,000) Dollars, as and for compensatory damages.

g) An award of general and special damages for the Defendant's wrongful acts;

h) An award of punitive damages for the Defendant's reprehensible and outrageous conduct, and to deter the Defendant's future reprehensible and outrageous conduct;

i) An award of costs and any reasonable attorney fees incurred in this action; and

j) For such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on each and every issue triable herein by jury.

Respectfully submitted,

*Joe Johnson*
JOE JOHNSON
POST OFFICE BOX 441572
FORT WASHINGTON, MD   20749